FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 22, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARY DENISE B.,[1]

                 Plaintiff,

   v.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

No:  2:21-cv-00132-LRS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Maren A. Bam.  Defendant is represented by Special Assistant United States Attorney Benjamin J. Groebner.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 15, is denied and Defendant's Motion, ECF No. 16, is granted.

---

[1] Plaintiff's last initial is used to protect her privacy.

ORDER - 1

### JURISDICTION

Plaintiff Mary Denise B. (Plaintiff), filed for disability insurance benefits (DIB) on September 29, 2015, alleging an onset date of March 12, 2015.  Tr. 304-07.  Benefits were denied initially, Tr. 175-77, and upon reconsideration, Tr. 181-83.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 27, 2017.  Tr. 43-84.  On February 13, 2018, the ALJ issued an unfavorable decision, Tr. 148-68.  On October 24, 2019, the Appeals Council vacated the ALJ's decision and resolution of outstanding issues.  Tr. 169-74.

On June 3, 2020, Plaintiff appeared at a second hearing, and a different ALJ issued a second unfavorable decision on June 29, 2020.  Tr. 15-40.  The Appeals Council denied review on February 3, 2021.  Tr. 1-7.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

### BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 59 years old at the time of the first hearing.  Tr. 48.  She has work experience as a warehouse worker, order coordinator, and program support supervisor.  Tr. 54.  At the second hearing, Plaintiff testified that she cannot work due to difficulties with concentration and interacting with others, and due to extreme pain in her hands, feet, hips, and tailbone.  Tr. 98.  She experiences random pain

from fibromyalgia, including back pain and pain in all of her joints.  Tr. 98.  She has diabetes.  Tr. 106-07.  She has problems with her vision due to "floaters."  Tr. 107-08.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

ORDER - 4

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER - 6

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since May 27, 2015, the alleged onset date. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia and obstructive sleep apnea. Tr. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 26.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> Standing and walking is limited to no more than 4 hours per day so she needs the ability to alternate sitting and standing every 60 minutes. She can perform postural activities frequently, but she can never climb ladders, ropes or scaffolds or crawl. Bilateral handling, fingering, and feeling is limited to frequent. She must avoid concentrated exposure to extreme temperatures, vibration, respiratory irritants, and hazards. The claimant has additional limitations resulting from the distraction caused by pain: These are that she is able to maintain concentration, persistence and pace for 2-hour intervals in between regularly scheduled breaks, but should have no more than occasional changes in her work routine and should perform no fast-paced production rate of work.

Tr. 27.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an invoice control clerk and repair order clerk. Tr. 32. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 12, 2015, through the date of the decision. Tr. 32.

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 15. Plaintiff raises the following issues for review:

1.    Whether the ALJ's step four finding is legally sufficient; and

2.    Whether the ALJ properly considered the medical opinion evidence.

ECF No. 15 at 2.

**DISCUSSION**

**A.    Step Four**

Plaintiff contends the ALJ erred at step four by finding she can perform past relevant work.  ECF No. 15 at 8-10.  At step four of the sequential evaluation, the ALJ must determine whether the claimant has the residual functional capacity to perform past relevant work.  20 C.F.R. § 416.920(f).  An ALJ may ask a VE to provide testimony as to the physical and mental demands of a claimant's past relevant work to assess whether the claimant is still able to perform such past work. 20 C.F.R. § 416.960(b)(2).  An ALJ may also ask a VE to provide an opinion in response to a hypothetical question as to whether a person with the mental and physical limitations similar to the claimant could do past relevant work or work that exists in significant numbers in the national economy.  *Id.*

Here, the ALJ asked the vocational expert whether a hypothetical person with the same residual functional capacity and background as the Plaintiff could perform

any past relevant work.  Tr. 111.  The vocational expert testified that the person described in the hypothetical could perform Plaintiff's past relevant work of invoice control clerk, DOT 214.362-06, *available at* 1991 WL 671872, and repair order clerk, DOT 221.382-022, *available at* 1991 WL 672030.  Tr. 112.

### 1.  Limitation on Fast-Paced Production Rate Work

Plaintiff contends the RFC finding prohibiting "fast-paced production rate of work" is inconsistent with DOT Temperaments code "T" for her past relevant work.  ECF No. 15 at 9-10.  Temperaments are the adaptability requirements made of a worker by specific types of jobs.  U.S. Dep't of Labor, *Revised Handbook for Analyzing Jobs*, 10-1 (1991).[2]  The category of Temperaments is part of the job analysis because "different job situations call for different personality traits on the part of the worker."  *Id.*   The Temperament factor "T" stands for "attaining precise set limits, tolerances, and standards," and "[i]nvolves adhering to and achieving exact levels of performance, using precision measuring instruments, tools, and machines to attain precise dimension; preparing exact verbal and numerical records; and complying with precise instruments and specifications for materials, methods, procedures, and techniques to attain specific standards."  *Id.* at 10-4.  Nothing in this

---

[2] *Available at* https://skilltran.com/rhaj/rhaj10.pdf#page=4.

ORDER - 9

definition suggests "fast-paced production rate of work" is required by this temperament code.[3]

Plaintiff does not address the definition of the "T" code but relies on two unreported district court cases in asserting the "T" code conflicts with a limitation to no fast-paced or production-quota work.  ECF No. 15 at 9, ECF No. 17 at 6.  In *Sandra H. v. Comm'r of Soc. Sec.*, a similar issue was before the court, but no finding regarding the meaning of "attaining precise set limits, tolerances, and standards" was made because two other jobs were available for which the "T" code was not applicable.  No. 2:17-CV-403-FVS, 2019 WL 289811, at *7 (E.D. Wash. Jan. 22, 2019).  In *Ryan Patrick A. v. Berryhill*, the court in dicta cited *Sandra H.* for the proposition that attaining precise set limits, tolerances, and standards "has been interpreted as barring fast-paced or production-quota work" and "would conflict with an RFC barring fast-paced or production-quota work."  No. EDCV 17-2526-

---

[3] A review of "T" codes 1-6 further indicates that fast-paced and production rate work should not be construed as part of "attaining precise set limits, tolerances, and standards," as they suggest attainment of limits, tolerances, and standards means precision in activities such as mixing drugs and compounds, setting up and operating machinery according to specifications, dancing in formations or groups, airplane navigation, parachute inspection, and financial record-keeping.  U.S. Dep't of Labor, *Revised Handbook for Analyzing Jobs*, 10-1 (1991).

ORDER - 10

JPR, 2019 WL 1383800, at *6 (C.D. Cal. Mar. 27, 2019).  However, the *Sandra H.* court made no finding or conclusion to that effect.

In short, the court is not persuaded that an RFC limitation barring fast-paced production-quota work is inconsistent with the DOT "T" code for the two jobs identified by the vocational expert as consistent with the hypothetical.  The ALJ asked the vocational expert to specifically verify that "neither of these two jobs, the invoice control clerk or the repair order clerk would have anything more than occasional changes or fast pace" and the vocational expert affirmed.  Tr. 112.  The vocational expert's testimony was not inconsistent with the DOT and the ALJ did not err in relying on that testimony.

### 2. *Reasoning Levels*

Plaintiff also argues that the DOT "GED Reasoning Levels" assigned to the jobs of invoice control clerk and repair order clerk are inconsistent with Plaintiff's RFC.  ECF No. 15 at 9-10.  General Educational Development levels are "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective."  *Dictionary of Occupational Titles* (DOT), App'x C (4th ed. 1991).  The GED levels are divided into six sub-levels each for reasoning, mathematics, and language.  *Id.*

ORDER - 11

The job of invoice control clerk has a GED Reasoning Level of 4, DOT §

214.362-06, *available at* 1991 WL 671872.  Reasoning Level 4 means a job may

require a worker to:

> [a]pply principles of rational systems to solve practical problems and
> deal with a variety of concrete variables in situations where only
> limited standardization exists.  Interpret a variety of instructions
> furnished in written, oral, diagrammatic, or schedule form.  (Examples
> of rational systems include: bookkeeping, internal combustion
> engines, electric wiring systems, house building, farm management,
> and navigation.)

DOT, Appendix C.  The job of repair order clerk has a GED Reasoning Level of 3.

DOT § 221.382-022, *available at* 1991 WL 672030.  A Reasoning Level 3 job may

require the worker to, "[a]pply commonsense understanding to carry out instructions

furnished in written, oral, or diagrammatic form.  Deal with problems involving

several concrete variables in or from standardized situations."  DOT Appendix C.

Plaintiff contends the ALJ identified an "adaptation concern" and a

"persistence concern" which conflict with GED Reasoning Level 4 required for

invoice control clerk.  ECF No. 15 at 9-10.  Plaintiff cites the ALJ's statement that:

> The undersigned has included two additional restrictions regarding
> changes to work environment, and no fast paced production rate of
> pace based on the claimant's allegations of pain and the medical
> expert's testimony that the degree of pain could reach a point it might
> affect claimant's persistence and adaptation to a moderate degree.

ECF No. 15 at 9 (quoting Tr. 30).  Plaintiff's argument is not clear, but there is no

apparent conflict with the definition of GED Reasoning Levels 3 or 4 and the

ORDER - 12

possible moderate pace or adaptation concern mentioned by the ALJ.  Furthermore, as the ALJ indicated, the possible moderate pace or adaptation concern was incorporated into limitations of "no more than occasional changes in her work routine" and "no fast-paced production rate of work," which were included in the RFC.  Tr. 27.  Plaintiff's argument that the Reasoning Level 3 and 4 definitions are inconsistent with the RFC is unsupported by citation to any authority and is without merit on its face.  ECF No. 17 at 3.  The vocational expert testified that the hypothetical person with the same limitations contained in the RFC can perform the demands of invoice control clerk and repair order clerk.  Plaintiff has not established any conflict between the DOT and the vocational expert's testimony.

### 3. Vocational Expert Testimony

An ALJ may not rely on the testimony of a VE "without first inquiring whether that expert's testimony conflicts with the [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1150 (9th Cir. 2007).  The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT, and "elicit a reasonable explanation for any discrepancy" with the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); Social Security Ruling 00–4p, *available at* 2000 WL 1898704 *1.  When the ALJ fails to ask the VE whether his testimony conflicts with the DOT, this procedural error is harmless if either there is no conflict or the VE had provided sufficient support for his conclusion so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n. 19.

ORDER - 13

Here, for the reasons discussed above, there is no conflict with the DOT, so any error in failing to inquire about consistency with the DOT is harmless.

**B.    Medical Opinions**

Plaintiff contends the ALJ failed to properly consider the opinion of the medical expert, Steven Golub, M.D., and treating provider, Sue Cole, PA-C.[4]  ECF No. 15 at 10-14.

*1.  Steven Golub, M.D.*

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.*  "In addition, the regulations give more weight to opinions that are

---

[4] For claims filed on or after March 27, 2017, new regulations changed the method of evaluating medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  This claim was filed in 2015, so the new regulations do not apply.

ORDER - 14

explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 2014).

Dr. Golub, the medical expert, testified at the first hearing and noted fibromyalgia is diagnosed in the record. Tr. 49. He opined that Plaintiff is limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally; can sit for six hours in an eight-hour workday; may stand and walk for four hours in an eight-hour workday; can frequently reach, handle, finger and feel; can perform all postural activities frequently except no unprotected heights and occasional exposure to moving mechanical parts; and she is limited to minimal exposure to pulmonary irritants, extreme temperatures, and extreme vibration. Tr. 49-50.

ORDER - 15

1    The ALJ gave great weight to Dr. Golub's opinion because he reviewed the

2    entire record, gave a reasonable and persuasive explanation for his opinion, and has

3    an understanding of Social Security disability programs and evidentiary

4    requirements.  Tr. 31.  The ALJ also found Dr. Golub's opinion is consistent the

5    physical exam findings of Dr. Mathur, a treating physician (Tr. 704-15), and is well-

6    supported by the treatment record.  Tr. 31 (citing Tr. 779-843, 1298-1304).

7        First, Plaintiff contends that Dr. Golub's explanations were lacking and should

8    not have been afforded the most weight.  ECF No. 15 at 12.  Plaintiff asserts his

9    statements "were not very cogent" and that his "guesstimate" regarding some

10   limitations is insufficient.  ECF No. 15 at 10-11.  Plaintiff does not explain how Dr.

11   Golub's statements lack cogency and this argument is without merit.  Plaintiff takes

12   issue with Dr. Golub's statement that, when asked about her limitations, he said he

13   would offer his "best guesstimate."  Tr. 49.  However, when read in context, it is

14   noted that Dr. Golub found no objective evidence of limitations and stated that he

15   would assess limitations "based on the treatment record" because "she did have

16   multiple visits with medical providers for these symptoms."  Tr. 49.  Without

17   objective evidence of limitations, it was reasonable and appropriate for Dr. Golub to

18   estimate limitations based on the medical record.  There is no particular significance

19   to Dr. Golub's use of the word "guesstimate" as the context indicates that he was not

20   "guessing" or creating limitations out of thin air.

21

Plaintiff also asserts that Dr. Golub's assessment of postural limitations is insufficient. ECF No. 15 at 12-13. Dr. Golub noted Dr. Mathur's June 2016 examination and assessment that Plaintiff has no postural limitations based on his exam but, "I'm going to have to just say that those could all be done frequently, but again, I'm just going by his notes . . . ." Tr. 50, 712. Plaintiff's argument is unclear. It is counterintuitive to suggest that Dr. Golub's opinion is less reliable because he gave Plaintiff the benefit of the doubt and assessed a limitation of frequent postural limitations in spite of Dr. Mathur's opinion that no postural limitations are supported. In light of his observation that there is no objective evidence of limitations and no assessment of postural limitations by Dr. Mathur, Dr. Golub's assessment actually cuts in Plaintiff's favor.

Furthermore, even if Dr. Golub's testimony was equivocal (and the court does not so find), it is the ALJ's responsibility to consider equivocal testimony of an expert witness along with other evidence and medical opinions in reaching his conclusions. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). It is not necessary for an ALJ to agree with everything an expert witness says in order to conclude the testimony constitutes substantial evidence. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the ALJ reasonably relied on Dr. Golub's testimony even though he used the word "guesstimate."

1    Second, Plaintiff contends that the ALJ's conclusion that Dr. Golub's opinion

2    is consistent with Dr. Mathur's opinion is erroneous.  ECF No. 15 at 13.  Dr. Mathur

3    opined that Plaintiff can sit for two to three hours; stand for three to four hours; walk

4    for three to three and a half hours; should easily be able to lift and carry up 30-50

5    pounds frequently; and has no postural, manipulative, or environmental limitations.

6    Tr. 712.  The ALJ found that Dr. Golub's opinion is consistent with Dr. Mathur's

7    findings and opinion.  Tr. 31.

8    Plaintiff notes differences between the limitations assessed by Dr. Golub and

9    Dr. Mathur but does not show how Dr. Golub's opinion is unsupported.  ECF No. 15

10   at 13.  Dr. Mathur opined Plaintiff could stand for three to four hours and walk for

11   three to three-and-a-half hours, for a total stand/walk of six to seven-and-a-half

12   hours.  Tr. 712.  Dr. Golub opined Plaintiff could stand/walk for up to four hours.

13   Tr. 50.  The ALJ credited the more restrictive opinion of Dr. Golub in formulating

14   the RFC and included an additional limitation of a sit/stand option.  Tr. 27.  Plaintiff

15   observes this finding is inconsistent with light work which requires the ability to

16   stand/walk for up to six hours.  ECF No. 15 at 13.  Plaintiff's argument is inapposite,

17   however, because the RFC finding is for light work with additional limitations and

18   the vocational expert testified that work is available for a hypothetical person with

19   Plaintiff's RFC.

20   Furthermore, the ALJ did not say the opinions are identical; in fact, the ALJ

21   gave more weight to Dr. Golub's opinion because he reviewed the longitudinal

record.  Tr. 31.  Notably, all of limitations assessed by Dr. Golub are essentially as restrictive or more restrictive than Dr. Mathur's assessment.  *Compare* Tr. 50, 712. This means they are consistent with Dr. Mathur's opinion.  Plaintiff has not demonstrated that the ALJ erred regarding Dr. Golub's opinion.

### 2.  Sue Cole, PA-C

Before March 2017, a physician assistant was not considered an "acceptable medical source."  *See* 20 C.F.R. § 416.902(a)(8).  Instead, physician assistants were defined as "other sources" not entitled to the same deference as an "acceptable medical source."  *Molina*, 674 F.3d at 1104.  The ALJ is required to consider evidence from "other sources" but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so."  *Molina*, 674 F.3d at 1104.

Ms. Cole completed a Physical Assessment form in September 2016 and indicated diagnoses of fibromyalgia, depression, anxiety, osteopenia, and arthralgias. Tr. 721-22.  She opined that Plaintiff's attention and concentration are constantly impaired by her symptoms; she can sit for one hour and stand/walk for one hour in an eight-hour workday; she would need to lie down and take hourly breaks during a workday; she could occasionally lift up to 10 pounds and frequently lift less than 10 pounds; she had limitations of 25% to 50% of a workday for use of her hands and arms for grasping, manipulating and reaching; and that she would miss work more than four times per month.  Tr. 721-22.

ORDER - 19

First, the ALJ gave little weight to Ms. Cole's assessment because she failed to identify any supportive objective findings and her opinion is inconsistent with objective medical evidence of relatively mild physical abnormality documented by other sources in the records.  Tr. 31.  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957.  Plaintiff's primary argument is that the ALJ should not have considered a lack of objective evidence in evaluating Ms. Cole's opinion because fibromyalgia is a unique condition which "eludes such measurement."  ECF No. 15 at 14 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)).  Nevertheless, this does not require the ALJ to ignore the medical record or credit opinions that are not explained or supported after crediting other opinions which are explained and supported by substantial evidence.   Dr. Golub testified that there is little objective evidence of Plaintiff's limitations, but assessed limitations based on the record of her office visits and treatment.  Tr. 49-50.  Dr. Mathur examined Plaintiff, made findings, and found Plaintiff less limited than PA Cole.  Tr. 712.  Plaintiff does not address the findings referenced by Dr. Golub or Dr. Mathur's exam results.  The ALJ's reasons are germane and supported by substantial evidence.

Second, the ALJ gave little weight to Ms. Cole's opinion because it is inconsistent with Plaintiff's reported activities.   An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.

ORDER - 20

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The

ALJ observed that Plaintiff was able to attend appointments, prepare meals, clean,

do laundry, go out to visit her mother weekly, spend time with a friend at a cabin

or lake, and ride a bicycle two miles each week.  Tr. 31.  In her reply, Plaintiff for

the first time argues that the ALJ should not have considered her bicycle rides

because she stated that is sometimes unable to ride due to fibromyalgia symptoms.[5]

ECF No. 17 at 5 (citing Tr. 622).  However, it was reasonable for the ALJ to

conclude that riding a bike at any interval is inconsistent with the severe limitations

assessed by Ms. Cole.  Even if Plaintiff's bike-riding was improperly considered,

Plaintiff argues only generally that it is improper to "use activities of daily living to

reject Plaintiff's testimony."  ECF No. 17 at 5.  Plaintiff is incorrect, as the ALJ

did not cite Plaintiff's daily activities to reject her testimony, but ALJ compared

---

[5] Arguments not made in an opening brief may be deemed waived.  *Bray*, 554 F.3d
at 1226; *see also Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised
for the first time in a reply brief are deemed waived."); *Thompson v.
Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961
(1981) ("appellants cannot raise a new issue for the first time in their reply briefs")
(citing *U.S. v. Puchi*, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*, 404 U.S. 853
(1971)); *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d
1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for
the first time in a reply brief.").

Plaintiff's activities to the limitations assessed by PA Cole and found them to be inconsistent. Based on the foregoing, the ALJ provided legally sufficient reasons for giving no weight to Ms. Cole's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 22, 2022.

_____
LONNY R. SUKO
Senior United States District Judge